Filed 7/20/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| In re R.T., a Person Coming Under the Juvenile Court Law. | ) ) ) ) | |
| | ) | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ) ) ) ) | |
| Plaintiff and Respondent, | ) ) ) | S226416 |
| v. | ) ) | 2/2 Ct.App. B256411 |
| LISA E., | ) ) | Los Angeles County |
| Defendant and Appellant. | ) ) | Super. Ct. No. DK03719 |

The first clause of Welfare and Institutions Code section 300, subdivision (b)(1) (section 300(b)(1))[1] authorizes a juvenile court to exercise dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, *as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . .*" (Italics added.) We granted review to resolve a split of authority on

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

SEE CONCURRING OPINION

the following issue:  Does section 300(b)(1) require a finding that a parent was neglectful or in some way to blame for the "failure or inability" to adequately supervise or protect his or her child?

Relying on the text and purpose of section 300(b)(1)'s first clause, the Court of Appeal here concluded that it does *not* require such a finding.  However, the Court of Appeal in *In re Precious D.* (2010) 189 Cal.App.4th 1251 (*Precious D.*), which dealt with markedly similar facts, reached a contrary conclusion.  It held that dependency jurisdiction under section 300(b)(1) can only be authorized after a finding that a parent's inability to protect her incorrigible child is due to "parental unfitness or neglectful conduct." (*Precious D.,* at p. 1259.)  Focusing on the dependency process as a whole, the *Precious D.* Court of Appeal reasoned that because these proceedings may reach a point where parental rights are ultimately terminated, a finding of "parental culpability" is required when dependency jurisdiction is initially imposed to comport with federal due process considerations.  (*Id.* at p. 1261 ["parental rights would be terminated and the family unit destroyed without any finding of unfitness or neglectful conduct"]; see *In re James R.* (2009) 176 Cal.App.4th 129, 135, quoting *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 (*Rocco M.*) [delineating three elements to support dependency jurisdiction under § 300(b)(1)].)

For reasons that follow, we agree with the Court of Appeal here that the first clause of section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child.  We disapprove *In re Precious D.*, *supra*, 189 Cal.App.4th 1251, to the extent that it is inconsistent with the views expressed in this opinion.  (See *post*, at p. 20, fn. 6.)

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the case are largely undisputed. Lisa E. (mother) gave birth to daughter R.T. in 1996. At age 14, R.T. began running away from home for days at a time and not attending school. R.T. falsely reported that mother had abused her. At age 15, R.T. gave birth to a daughter (who became a dependent of the court) and had another child a few years later. Mother tried unsuccessfully to supervise and protect R.T., and sought support from the Los Angeles County Department of Children and Family Services (Department) and law enforcement. She later arranged for R.T. to live with her parents, R.T.'s maternal grandparents, because R.T.'s grandfather used to work with troubled youth and R.T.'s history of falsely reporting mother's abuse made it difficult for mother to discipline her. R.T. struggled with "anger management issues," as it was reported she threw a chair at her maternal grandfather.

On February 21, 2014, the Department filed a petition to declare then 17-year-old R.T. a dependent of the juvenile court on the ground that she faced a "substantial risk [of] . . . serious physical harm or illness, as a result of the failure or inability of [mother] to adequately supervise or protect" her. (§ 300(b)(1), first clause.) The juvenile court asserted jurisdiction over R.T., reasoning that "the mother cannot control [R.T.] so she has given her off to grandparents and they can't control her either." The court issued a dispositional order authorizing the Department to place R.T. elsewhere while reunification services were provided, and ultimately placed R.T. back with her grandparents. Mother appealed, and the Court of Appeal affirmed the jurisdictional and dispositional orders of the juvenile court.

We granted review.

DISCUSSION

## A. Background

We begin with a brief overview of the dependency and delinquency statutory schemes governing a juvenile court's jurisdiction over a child. (§§ 300 [dependency jurisdiction], 601, 602 [delinquency jurisdiction].) "Delinquency courts follow a system parallel to that used in dependency courts for removing a child from the family home. The dependency and delinquency systems serve overlapping but slightly different aims, however. Whereas the dependency system is geared toward protection of a child victimized by parental abuse or neglect, the delinquency system enforces accountability for the child's own wrongdoing, both to rehabilitate the child and to protect the public." (*In re W.B.* (2012) 55 Cal.4th 30, 46; see *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [objective of dependency scheme].)

Under the delinquency scheme, section 601, subdivision (a), confers juvenile court jurisdiction based on a child's so-called "status offenses," i.e., refusing to obey orders of a parent or guardian, being beyond parental control, violating age-based curfew ordinances, or being truant or disobedient in school. (*In re W.B.*, *supra*, 55 Cal.4th at p. 42.)[2] Under the dependency scheme, a child may come within the jurisdiction of the juvenile court based on any of the various grounds in section 300. (§ 300, subds. (a)-(j); see *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247 (*Cynthia D.*) [discussing procedural steps to bring child

---

[2]    Jurisdiction under section 602 is conferred based on allegations that a minor's conduct "violates any law." (§ 602; see *In re W.B.*, *supra*, 55 Cal.4th at pp. 42-43.) This includes not only conduct that would be a crime if committed by an adult, but also conduct that is prohibited only when committed by a minor. (*In re W.B.*, *supra*, 55 Cal.4th at pp. 42-43; see Cal. Const., art. XX, § 22 [underage drinking].)

within juvenile court's jurisdiction for dependency proceedings].) "Generally speaking, Section 300 defines jurisdiction in terms of serious harm suffered by a child or the substantial risk of such serious harm to a child. Although the harm or risk of harm to the child must generally be the result of an act, omission or inability of one of the parents or guardians, the central focus of dependency jurisdiction is clearly on the child rather than the parent." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2017 ed.) § 2.14, p. 2-40.)

### B. Section 300(b)(1)

Subdivision (b) of section 300, sometimes referred to as the "failure to protect" provision, is divided into subdivision (b)(1) and (b)(2). (See Judicial Council form, JV-121 (rev. July 1, 2016).) Subdivision (b)(1) itself further sets out four separate grounds for dependency jurisdiction — the first clause of section 300, subdivision (b)(1) is at issue here.[3] It authorizes dependency jurisdiction if a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, *as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child*." (§ 300(b)(1), italics

---

[3] The first sentence of section 300(b)(1) provides: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of [1] the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or [2] the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or [3] by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or [4] by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

added.)  The question is, must a parent[4] in some way be blameworthy for being unable to supervise or protect her child?  Or does the parent's failure or inability alone support a juvenile court's assertion of dependency jurisdiction under section 300(b)(1)?

In reviewing this question of statutory construction de novo, we begin with several guiding principles.  We start with the statute's words, which are the most reliable indicator of legislative intent.  (*John v. Superior Court* (2016) 63 Cal.4th 91, 95.)  "We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose."  (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 293; see *Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 155-156.)  "When language is included in one portion of a statute, its omission from a different portion addressing a similar subject suggests that the omission was purposeful."  (*In re Ethan C.* (2012) 54 Cal.4th 610, 638 [reviewing § 300, subd. (f)].)

Section 300 does not define either "failure" or "inability," nor does the text of section 300(b)(1) on its face reveal whether a parent must in some way be to blame for this "failure or inability."  "Although not binding, it can be useful to refer to the dictionary definition of a word in attempting to ascertain the meaning of statutory language."  (*In re Marriage of Davis* (2015) 61 Cal.4th 846, 852, fn. 1.)  For example, in a nondependency case, the Court of Appeal explained that " '[f]ailure' means 'omission of performance of an action or task; *esp*: neglect of

---

[4]    Section 300(b)(1) applies equally to guardians, but for clarity, we will discuss section 300(b)(1) only in the context of parents.  (See § 300 ["As used in this section, 'guardian' means the legal guardian of the child."].)

an assigned, expected, or appropriate action'; 'inability' means 'the quality or state of being unable: lack of ability: lack of sufficient power, strength, resources, or capacity.' (Webster's Third New Internat. Dict. (1966) pp. 815, 1139.)" (*Brown v. Municipal Court* (1978) 86 Cal.App.3d 357, 365 [DUI-related statute, Veh. Code, former § 13354, subd. (b); see Webster's Third New Internat. Dict. (2002) pp. 815, 1139 [unchanged definitions of "failure" and "inability"].) The lack of ability, strength, or resources to protect or supervise a child suggests that no fault should be assigned.

It also bears emphasis that section 300(b)(1)'s first clause does not include words like "neglectful," "blameworthy," or "unfit" to characterize a parent's conduct. These are instead judicial constructions of section 300(b)(1). (See *Precious D.*, *supra*, 189 Cal.App.4th at p. 1261 ["finding of unfitness or neglectful conduct" necessary under § 300(b)(1)'s first clause to comport with federal due process]; *Rocco M.*, *supra*, 1 Cal.App.4th at p. 820 ["there is ample evidence of neglect, i.e., failure to adequately supervise or protect the minor"].)

In particular, the *Rocco M.* court in 1991 delineated the following "three elements" to determine whether a minor comes within the statutory definition of section 300(b)(1): "(1) *neglectful conduct by the parent in one of the specified forms*; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 820, italics added.) We begin with a brief discussion of *Rocco M.* because its three-part definition is often cited by courts, including the *Precious D.* court, as the basis for a jurisdictional finding under section 300(b)(1). (See *Precious D.*, *supra*, 189 Cal.App.4th at p. 1259; see, e.g., *In re John M.* (2013) 217 Cal.App.4th 410, 418; *In re Christian P.* (2012) 208 Cal.App.4th 437, 449; *In re B.T.* (2011) 193 Cal.App.4th 685, 692; *In re J.O.* (2009) 178 Cal.App.4th 139, 152; *In re James R.*, *supra*, 176 Cal.App.4th at p. 135; *In re David M.* (2005) 134

Cal.App.4th 822, 829; *In re Savannah M*. (2005) 131 Cal.App.4th 1387, 1395-1396; *In re Heather A*. (1996) 52 Cal.App.4th 183, 194.)

In *Rocco M*., the minor was then 11 years old and lived with his mother, who had a history of drug and alcohol abuse. In alleging that Rocco's mother's problems with abuse " 'interfere[d] with her ability to adequately parent, provide for and supervise the minor,' " the dependency petition described her leaving Rocco with a relative who was arrested for possession of heroin and methamphetamines, presumably while caring for Rocco, and with a family friend who on one occasion had kicked Rocco in the stomach. (*Rocco M*., *supra*, 1 Cal.App.4th at pp. 817-818.) At the jurisdictional hearing, Rocco testified that he saw his mother drink a lot of alcohol ("two bottles of Thunderbird in a day") and found what he thought was cocaine in the bathroom; he admitted his mother " 'wasn't taking care of me like she was supposed to.' " (*Id*. at p. 817.)

In upholding the dependency finding and order, the Court of Appeal concluded that "*there is ample evidence of neglect, i.e., failure to adequately supervise or protect the minor*. As Rocco testified, his mother simply 'was not there' for him much of the time. The central issue is whether the evidence was sufficient to justify a finding that *as a result of this neglect* Rocco had suffered, or there was a 'substantial risk' that he would suffer, 'serious physical harm or illness." (*Rocco M*., *supra*, 1 Cal.App.4th at p. 820, italics added.) The substantial risk of serious physical harm, the court explained, was that "Rocco's mother *created the danger* that Rocco would ingest hazardous drugs." (*Id*. at p. 825, italics added.) "By placing drugs under his nose, setting the wrong example, and leaving him entirely to his own devices over prolonged periods of time, [Rocco's mother] certainly subjected him to a substantial risk that he would eventually succumb" to the temptation to take drugs himself. (*Id*. at p. 826; see *id*. at p. 824 [with young children "the absence of adequate supervision and care

8

poses an inherent risk to their physical health and safety"].)  The *Rocco M.* court emphasized that its conclusion was based not on the mother's "apparent dependency on drugs or alcohol, but on *her creation of a home environment* providing Rocco with the means, the opportunity, and at least the potential motives to begin abusing drugs himself."  (*Id*. at p. 826, italics added; see *id*. at p. 825 [mother's "frequent and prolonged absences . . . created the opportunity for Rocco to ingest the drugs"].)

We do not disagree that under the facts recounted above, Rocco's mother's "failure or inability . . . to adequately supervise or protect" her son (§ 300(b)(1)) constituted neglect as that word is commonly understood in the dependency context.  (See *In re Ethan C*., *supra*, 54 Cal.4th at pp. 627-629 ["neglect" in § 300, subd. (f), unambiguous and not limited to criminal negligence].)  Her actions undoubtedly placed Rocco "in an environment allowing access to drugs, with nothing to prevent him from succumbing to the temptation to ingest them." (*Rocco M*., *supra*, 1 Cal.App.4th at p. 825.)

However, the *Rocco M*. court went astray by suggesting that a parent's failure to supervise or protect a minor must always amount to neglect to satisfy section 300(b)(1).  (*Rocco M*., *supra*, 1 Cal.App.4th at p. 820 ["there is ample evidence of neglect, i.e., failure to adequately supervise or protect the minor"].) By doing so and setting out "neglectful conduct" as an "element[]" of section 300(b)(1) (*id.* at p. 820), the Court of Appeal imposed a greater burden of proof than that required under the first clause.  By its terms, the first clause requires no more than the parent's "failure or inability . . . to adequately supervise or protect the child."  (§ 300(b)(1); see *ante*, at pp. 6-7.)  Indeed, the surrounding provisions in section 300 support the conclusion that the first clause of section 300(b)(1) does not require parental culpability.  (See *Winn v. Pioneer Medical Group, Inc.*, *supra*,

63 Cal.4th at p. 155 [looking at statute's "relationship to the text of related provisions"].)

For instance, several provisions in section 300 require that a parent have acted intentionally or willfully to support a juvenile court's dependency jurisdiction. (See § 300, subds. (a) [parent "inflicted nonaccidentally" "serious physical harm" on child], (c) [child is suffering, or is at substantial risk of suffering, serious emotional damage "as a result of the conduct of the parent"], (d) [parent's sexual abuse of child], (e) [child under five years old has suffered "severe physical abuse" by parent], (i) [child subjected to act(s) of cruelty by parent].)

Under other provisions, a parent's negligent conduct is sufficient. (§ 300(b)(1) [second clause; parent's "willful or negligent failure" to protect child from custodian's conduct]; *ibid.* [third clause; parent's "willful or negligent failure . . . to provide the child with adequate food, clothing, shelter, or medical treatment"]; § 300, subds. (d) [parent "knew or reasonably should have known" child was in danger of sexual abuse and failed to adequately protect child], subd. (e) [parent "knew or reasonably should have known" child under five years old was in danger of severe physical abuse], subd. (f) [parent's "abuse or neglect" caused death of another child], subd. (i) [parent "knew or reasonably should have known" child was in danger of being subjected to act(s) of cruelty and "failed to adequately protect" child].) And finally, under another provision, dependency jurisdiction is authorized when a parent is not at fault. (§ 300(b)(1) [fourth clause; parent's "inability . . . to provide regular care for the child" based on parent's "mental illness" or "developmental disability"].)

Because the Legislature has made parental culpability (based on either willful or negligent conduct) a requirement in some, but not all, grounds for asserting dependency jurisdiction under section 300, we may conclude that the

10

omission of a culpability requirement in the first clause of section 300(b)(1) "was purposeful." (*In re Ethan C.*, *supra*, 54 Cal.4th at p. 638.) Mother, however, counters with what she describes as an "equally weighty tenet that no principle of statutory construction is implied invariably without regard to indicia of legislative intent." Pointing to the over-100-year-old legislative history of section 300(b)(1) and section 600, mother asserts that there was a "shift of the incorrigible child from dependency to delinquency jurisdiction" beginning in 1961, which she suggests "implicitly resulted in the insertion of a parental fault or neglect requirement" in section 300(b)(1).

Our review of this legislative history leads us to conclude that the portion most pertinent to the issue here is the 1987 amendment to section 300, when the relevant language was first introduced, in addition to the section's amendments in 1989 and 1991. (Stats. 1987, ch. 1485, §§ 4, 4.5, pp. 5603, 5606; Stats. 1989, ch. 913, §§ 3, 4, pp. 3142, 3145; Stats. 1991, ch. 1203, §§ 1.5, 2, pp. 5863, 5866.) As we explain, this history makes clear that the Legislature did *not* intend to impose a parental fault requirement in the first clause of section 300(b)(1).

### C. Legislative history of section 300

In 1987, the Legislature replaced "the vague jurisdictional language of section 300 with 10 specific grounds for declaring a child a dependent of the juvenile court. The purpose of this change was to limit court intervention to situations in which children are threatened with serious physical or emotional harm in an effort to ensure more uniform application of the law." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 303; see Stats. 1987, ch. 1485, §§ 4, 4.5, pp. 5603, 5606 [Sen. Bill No. 243].) Significantly, this 1987 legislation also included "two, successive versions of [Welfare & Institutions Code] Section 300 which are identical except for one phrase in subsection (b) — '. . . or inability,' and one

11

phrase in subsection (c) — '. . . or who has no parent or guardian capable of providing appropriate care.' " (Sen. Select Com. on Children & Youth, Child Abuse Reporting Laws, Juvenile Court Dependency Statutes, and Child Welfare Services (Jan. 1988) p. 7 (hereafter 1988 Task Force Report); see also Legis. Counsel's Dig., Sen. Bill No. 243, 4 Stats. 1987, Summary Dig., p. 559.) The temporary version of section 300(b)(1)'s first clause, which was fixed to sunset or expire at the end of 1989 unless amended before then, read: "The minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure *or inability* of his or her parent or guardian to adequately supervise or protect the minor . . . ." (Stats. 1987, ch. 1485, § 4, p. 5603, italics added; see *ibid*., p. 5606 ["This section shall remain in effect only until January 1, 1990, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1990, deletes or extends that date"].)

Yet the effective period of this version of section 300 did *not* expire in 1989 or, as extended, in 1992.[5] Instead, the Legislature in 1991 repealed the version of section 300 that included neither the additional phrase "or inability" in subdivision (b), nor the phrase "or who has no parent or guardian capable of providing appropriate care" in subdivision (c). (Stats. 1991, ch. 1203, § 2, p. 5866 [repealing § 300 as amended by Stats. 1989, ch. 913, § 4, p. 3145]; Stats. 1991, ch. 1203, § 1.5, p. 5863.) Currently, the first clause of section 300(b)(1) — except for

---

[5]    The Legislature in 1989 made minor revisions to section 300, but otherwise retained the two successive versions of section 300. (Stats. 1989, ch. 913, §§ 3, 4, pp. 3142, 3145.) Like the 1987 legislation, the 1989 legislation also explained that the version with the additional phrases was to remain in effect "only until January 1, 1992, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1992, deletes or extends that date." (*Id*., § 3, pp. 3142, 3145.)

12

replacing "minor" with "child" in 1998 — remains unchanged from the 1987 version.  (§ 300(b)(1); see Stats. 1998, ch. 1054, § 2, p. 8078.)

This portion of section 300's legislative history has particular significance in this case.  The 1987 legislation's purpose including both a temporary version of section 300 and a version that would remain in effect after the temporary version's sunset date, was "so that certain classes of minors who are *currently served* by the child welfare system will continue to be served until agencies more appropriately equipped to handle these classes of minors are able to develop alternative systems for them.  Specifically, mentally ill minors, medically fragile infants, and *so-called 'status offenders' (runaway, truant or incorrigible minors), effective January 1, 1990, will no longer be eligible for adjudication and will not be served by child welfare services and the juvenile courts unless their condition is the result of their parents' behavior.  Absent parental abuse or neglect, these children are not well served by the child welfare system.*"  (1988 Task Force Report, *supra*, p. 7, italics added; see *id*. at p. 20 ["Because a child has a mental health problem, a substance abuse problem, a serious medical condition, or *demonstrates severe acting out*, does not mean the child should become a dependent of the court and that his/her family should receive child welfare services" (italics added)].)  The 1989 legislation extending section 300's sunset date from January 1, 1990 to January 1, 1992, also explained that section 300 "has been used to adjudicate seriously emotionally disturbed (SED) minors for out-of-home placement *without a court finding that the child has been subject to abuse or neglect*."  (Dept. of Finance, Enrolled Bill Rep. on Sen. Bill No. 551 (1989-1990 Reg. Sess.) as amended August 30, 1989, p. 2, italics added.)

In repealing the version of section 300 that did not include the additional phrase "or inability" in 1991, the Legislature explained that the then-current law provided that "[u]ntil January 1, 1992, *children who will suffer serious physical*

13

*harm due to the inability of a parent or guardian to provide adequate supervision*, and children who are suffering serious emotional damage, as described, who have no parent or guardian capable of providing appropriate care, *are included among those who are under the jurisdiction of the juvenile court and may be adjudged to be a dependent of the court*. [¶] This bill would delete the January 1, 1992, repeal date of these provisions, and would repeal an alternative section that did not include those children within the jurisdiction of the court." (Legis. Counsel's Digest, Sen. Bill No. 1125, 4 Stats. 1991, Summary Dig., p. 568, italics added.) This legislative history makes clear that by including — and not repealing — the phrase "or inability" in the first clause of section 300(b)(1), the Legislature intended to include children like R.T., i.e., those at substantial risk of serious physical harm due to no fault of the parent, within the purview of dependency jurisdiction.

Our conclusion that section 300(b)(1)'s first clause does not include a parental fault requirement conforms with the Legislature's relatively recent enactment of section 300, subdivision (b)(2). (Stats. 2014, ch. 29, § 23.) This provision, which deals with "commercially sexually exploited children," states that a child "who is sexually trafficked, . . . or who receives food or shelter in exchange for, or who is paid to perform, sexual acts . . . , and *whose parent or guardian failed to, or is unable to, protect the child*, is within the description of this subdivision," and may be adjudged a dependent of the juvenile court. (§ 300, subd. (b)(2), italics added.) This subdivision does not contain the terms "adequately" or "as a result of," which are included in section 300(b)(1).

Given the grave risk of harm sex trafficking poses to a child, one missed opportunity to protect a child is one too many; thus, the cause of a parent's inability to protect a child is immaterial to imposing jurisdiction under section 300, subdivision (b)(2). As we explain (see *post*, at pp. 16-17), this does not

14

mean, however, that the terms "as a result of" and "adequately" in section 300(b)(1) possess a meaning that suggests parental fault.

### D. Application to this case

"In reviewing the jurisdictional findings and disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.*, *supra*, 52 Cal.App.4th at p. 193; see *In re I.J.* (2013) 56 Cal.4th 766, 773.)

In arguing that dependency jurisdiction over R.T. was not warranted, mother insists she was not at fault or blameworthy because she did everything possible to control R.T.'s incorrigible behavior. We do not disagree — the record reveals her concerted (and at times desperate) efforts to protect and discipline R.T. However, mother's concept of parental fault or blame is viewed from a "moral standpoint," which does not directly inform whether a parent can provide a child "proper care and supervision." (*Newman v. Newman* (1952) 109 Cal.App.2d 359, 361 [father's devotion to children supported his parental "fitness from a moral standpoint," but not whether he could offer "proper care and supervision"].) Likewise, we agree with mother that she did not *create* the danger that R.T. would be at risk of serious physical harm in the same way that "Rocco's mother created the danger that Rocco would ingest hazardous drugs." (*Rocco M.*, *supra*, 1 Cal.App.4th at p. 825.) However, as discussed above (see *ante*, at pp. 8-10), a parent's conduct — short of actually creating the danger a child faces — may still satisfy the standard required under the first clause of section 300(b)(1).

This leaves us with mother's colorable claim based on causation, i.e., that R.T.'s "substantial risk" of "serious physical harm" was not "*as a result of*" mother's inability to protect or supervise R.T. under section 300(b)(1). Put another way, mother maintains the risk of harm R.T. faced had nothing to do with what mother did or did not do, and that R.T. alone was responsible, and should be held accountable, for her own choices.

The record supports that R.T. faced an ongoing risk of harm based on her increasingly self-destructive behavior, behavior that mother simply could not control. (See *ante*, at p. 3.) The Department's February 21, 2014 detention report went as far as describing R.T. as a "habitual runaway," who "puts herself at risk as evidenced by her leaving for several days without appropriate provisions, and does not appear to understand the risk and harm that she puts herself in or the risk that she would be putting on a 2 year old child." Despite her best efforts, mother admitted: "I feel [R.T.] is out of control because I cannot discipline her"; "I have not had any success stopping [R.T.'s] behavior."

At the same time, the record also supports a theory suggesting that R.T.'s disobedience was the reason mother was unable to protect or supervise R.T. For example, one Department report explained that R.T.'s "rebellious behavior has prevented her family from providing her with adequate supervision and guidance," and another report stated "it appears that the mother's inability to care for the minor is due to the minor's incorrigible behavior." These characterizations arguably support mother's assertion that R.T.'s risk of harm was "as a result of" R.T.'s own conduct and not based on mother's inability to care for or protect R.T., as required under section 300(b)(1).

Although mother's causation argument has some merit, we conclude that substantial evidence supports the jurisdictional finding and disposition here. (See *In re Heather A.*, *supra*, 52 Cal.App.4th at p. 193.) The Department summarized

16

mother and R.T.'s complicated relationship as follows: Mother "is unable to provide appropriate parental care and supervision of the child due to the child's chronic runaway behavior and acting out behavior. The child refused to return to the mother's home and care. Such inability to provide appropriate parental care and supervision of the child by the mother endangers the child's physical health and safety and places the child at risk of physical harm, damage and danger." Whether it was R.T.'s misbehavior and disobedience, or mother's inability to supervise or protect R.T., that initiated this cyclical pattern of conflict, does not matter here. The basis for jurisdiction under section 300(b)(1) is whether the child is at "substantial risk" of "serious physical harm or illness." (See Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure, *supra*, § 2.14, p. 2-40.) As mother admits, "[t]here is no doubt that R.T., a 17 1/2 year old mother of one and about to be a mother of two, was at substantial risk of serious harm." In that regard, given the substantial risk of harm that R.T. faced, there is little question that mother was unable to "adequately" supervise or protect R.T. as required under section 300(b)(1).

Indeed, these dueling theories of causation underscore the complexity of family dynamics, and the difficulty of assigning responsibility in this situation. "The loss of parental control is rarely if ever attributable solely to the parent or the child. It is instead the result of a long and complicated chain of actions and reactions culminating in the child's refusal to submit to parental authority. To attempt to affix responsibility on one party or the other is alien not only to the spirit and letter of the juvenile court laws, but to any realistic view of family relationships." (*In re Bettye K*. (1991) 234 Cal.App.3d 143, 151 [explaining §§ 300 & 601 are not mutually exclusive].)

17

### E. Mother's remaining arguments

We address mother's remaining arguments. Mother asserts that if the first clause of section 300(b)(1) authorizes what she describes as "no fault" dependency jurisdiction, this interpretation would be "at odds with the carefully created distinctions made by the Legislature and, for all practical purposes, renders [section] 601 a nullity." As relevant here, under section 601, subdivision (a), a minor who "persistently or habitually refuses to obey the reasonable and proper orders or directions of his or her parents, guardian, or custodian, or who is beyond the control of that person," may be adjudged a ward of the court. (§ 601, subd. (a); see *ante*, at p. 4.) Mother asserts that because R.T.'s incorrigibility was *not* shown to be a result of parental fault or neglect, R.T. "fell under section 601."

Mother's nullity argument assumes that there can be no overlap between jurisdiction imposed under section 300 versus under section 601. She maintains that there is a "bright line distinction" between the two, and that if a child is incorrigible and the parent is "blameless," there is no discretion but to proceed under section 601. We disagree. Section 241.1 expressly recognizes that when "a minor appears to come within the description of both Section 300 and Section 601 or 602," the court, in conjunction with county probation and child welfare services departments, will determine which type of jurisdiction "will serve the best interests of the minor and the protection of society." (§ 241.1, subd. (a).) In other words, contrary to mother's suggestion, a minor's status does not necessarily depend on any distinction between the types of conduct bringing the child into the juvenile court system. (See *In re W.B.*, *supra*, 55 Cal.4th at pp. 46-47; *In re M.V.* (2014) 225 Cal.App.4th 1495, 1510 ["dual juvenile court jurisdiction may legitimately be exercised in the best interests of the minor"].)

We recognize that mother's insistence that delinquency jurisdiction rather than dependency jurisdiction should apply here is an effort to avoid being labeled

18

an unfit parent. As we have explained, however, this label does *not* automatically flow from a finding of dependency jurisdiction under section 300(b)(1)'s first clause. (See *ante*, at pp. 7-11.) More importantly, mother's preferred approach would bring with it demonstrably negative repercussions for R.T.: "the delinquency finding carries with it a stigma that may follow the minor throughout his or her life." (*In re Kevin S.* (2003) 113 Cal.App.4th 97, 118.)

Notwithstanding the distinction between minors who commit status offenses (§ 601) and those who engage in criminal conduct (§ 602; see *In re W.B., supra*, 55 Cal.4th at pp. 42-43), both groups are subject to the jurisdiction of the delinquency system, which "enforces accountability for the child's own wrongdoing, both to rehabilitate the child and to protect the public." (*In re W.B., supra*, 55 Cal.4th at p. 46.) In contrast, the dependency system, which is focused on providing "maximum safety and protection for children" who are currently being abused or neglected or who are at risk of that harm, may provide "a full array of social and health services" to help dependent children and their families. (§ 300.2.) Thus, a dependency court may take a "holistic approach to services including emancipation services, increased effort to keep sibling groups in the same placement, an attorney separate from that of the state or the minor's parents, mental health services, special education services in line with each child's individual education plan, and the least restrictive placement possible (often a foster family with which the child can develop emotional ties)." (Note, Dependents Who Become Delinquents: Implementing Dual Jurisdiction in California under Assembly Bill 129 (2006) 5 Whittier J. Child & Fam. Advocacy 507, 526.) Taking the long view of this issue, and considering what valuable services the dependency system has to offer in this situation, we decline to adopt an approach that would automatically place an incorrigible child in the delinquency system pipeline.

**F.  *Precious D.***

Finally, we briefly discuss *Precious D.*, which relied on due process principles to reach a contrary conclusion.  (*Precious D.*, *supra*, 189 Cal.App.4th at p. 1261; see *ante*, at p. 2.)  For her part, mother asserts that section 300(b)(1)'s statutory language, not its constitutionality, is at issue here.  In any event, we conclude that the *Precious D.* court's constitutional basis for imposing a requirement of parental fault in section 300(b)(1), i.e., that parental rights could be ultimately terminated without any finding of unfitness or neglect, is erroneous. (*Precious D.*, *supra*, 189 Cal.App.4th at p. 1261.)  Contrary to that court's suggestion, "[b]y the time termination is possible under our dependency statutes the danger to the child from parental unfitness is so well established that there is no longer 'reason to believe that positive, nurturing parent-child relationships exist.' " (*Cynthia D.*, *supra*, 5 Cal.4th at p. 256.)  In other words, after the preliminary step of dependency adjudication, "the system includes many subsequent safeguards to ensure that parental rights and authority will be restricted only to the extent necessary for the child's safety and welfare." (*In re Ethan C.*, *supra*, 54 Cal.4th at p. 617; *In re Zeth S.* (2003) 31 Cal.4th 396, 410 [explaining how " '[t]he dependency scheme is a "remarkable system of checks and balances" ' "].)[6]

---

[6]     We disapprove *In re Precious D.*, *supra*, 189 Cal.App.4th 1251, to the extent it is inconsistent with the views expressed in this opinion.

20

## CONCLUSION

In reaching this conclusion, we in no way pass judgment on mother's inability to control R.T.'s incorrigible behavior. "Obstinacy and defiance test the patience of adults charged with the tending to the needs of minor children." (*In re Natasha H*. (1996) 46 Cal.App.4th 1151, 1158.) However, when that child's behavior places her at substantial risk of serious physical harm, and a parent is unable to protect or supervise that child, the juvenile court's assertion of jurisdiction is authorized under section 300(b)(1).

Based on the foregoing, we affirm the Court of Appeal's judgment.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

**CONCURRING OPINION BY LIU, J.**

Today we hold that Welfare and Institutions Code section 300, subdivision (b)(1) (section 300(b)(1)) "authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child." (Maj. opn., *ante*, at p. 2.)  Although the text of the statute does not compel this result, the inference from legislative history is persuasive. (*Id.* at pp. 11–14.)

The first prong of section 300(b)(1) says the harm or substantial risk of harm that forms the predicate for dependency jurisdiction must exist "*as a result of* the failure or inability of his or her parent or guardian to *adequately* supervise or protect the child." (Italics added.)  What is tricky is how to give effect to the statute's causation requirement — i.e., the parent's or guardian's inadequate supervision must be the cause of the harm or risk of harm.  The record contains evidence of causation that runs in the opposite direction:  Instead of saying R.T.'s incorrigible behavior was due to her mother Lisa's inability to adequately care for her, the Los Angeles County Department of Children and Family Services determined that "the mother's inability to care for the minor is due to the minor's incorrigible behavior" and that "the minor's rebellious behavior has prevented her family from providing her with adequate supervision and guidance."  This is not the only case in which the department has made such determinations.  (See *In re Priscilla A.* (2017) 11 Cal.App.5th 551, 558, review granted July 12, 2017, S241995 ["Father 'is unable to provide appropriate care and supervision for the

child due to the child's refusal to return to the father's home and care.' "].)
Ultimately, our decision today comes close to saying that *whenever* a child has
suffered or is at substantial risk of suffering serious harm, it follows that the parent
or guardian, even if not at fault, has shown a "failure or inability . . . to adequately
supervise or protect the child" and that the harm exists "as a result of" that
inadequacy. (§ 300(b)(1).)

This holding is in some tension with our understanding that "the
dependency system is geared toward protection of a child victimized by parental
abuse or neglect." (*In re W.B., Jr.* (2012) 55 Cal.4th 30, 46; see Sen. Select Com.
on Children & Youth, Child Abuse Reporting Laws, Juvenile Court Dependency
Statutes, and Child Welfare Services (Jan. 1988) p. 7 ["[a]bsent parental abuse or
neglect," runaway children "are not well served by the child welfare system"].)
This conventional understanding is consistent with the fact that the exercise of
dependency jurisdiction may have serious consequences for a parent or guardian,
up to and including the possibility of termination of parental rights. There are
safeguards, to be sure. (Maj. opn., *ante*, at p. 20.) But it must be acknowledged
that simply being found "inadequate" as a parent, even when the parent is not at
fault, can carry a painful stigma.

The dependency statutes seek to balance competing values: protecting
children from harm, preserving family ties, and avoiding unnecessary intrusion
into family life. (Welf. & Inst. Code, §§ 300, 300.2.) Our holding today —
authorizing dependency jurisdiction without a showing of parental fault — rests to
a substantial degree on an inference from legislative history. The Legislature may
wish to revisit this issue and, if appropriate, amend the statute in a manner that
clarifies the proper balance of competing values in difficult cases like this one.

**LIU, J.**

2

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re R.T.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 235 Cal.App.4th 795
**Rehearing Granted**

_____

**Opinion No.** S226416
**Date Filed:** July 20, 2017

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Marguerite D. Downing

_____

**Counsel:**

Nancy Rabin Brucker, under appointment by the Supreme Court, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, William D. Thetford, Principal Deputy County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Nancy Rabin Brucker
11661 San Vicente Boulevard, Suite 500
Los Angeles, CA  90049
(310) 476-0965

Stephen D. Watson
Deputy County Counsel
201 Centre Plaza Drive, Suite 1
Monterey Park, CA  91754-2142
(323) 526-6191