Filed 2/8/24  In re Antonio T. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re ANTONIO T., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E081656 |
| Plaintiff and Respondent, | (Super.Ct.No. J295711) |
| v. | OPINION |
| KEVIN T., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Reversed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant Kevin T.

Tom Bunton, County Counsel, and Pamela J. Walls, Special Counsel, for Plaintiff and Respondent.

Kevin T. (Father) appeals from the juvenile court's dispositional orders regarding his son, Antonio T. The court found true allegations of domestic violence between Father and the paternal grandparents, and it took jurisdiction over Antonio under Welfare and Institutions Code section 300, subdivision (b). (Unlabeled statutory citations refer to this code.) The court then removed Antonio from Father's custody, placed Antonio with Silvia T. (Mother), granted Mother sole legal and physical custody, ordered supervised visitation for Father, and terminated jurisdiction.

Father argues that the record does not contain substantial evidence to support the jurisdictional finding or the removal order. He also argues that the court abused its discretion by granting Mother sole legal and physical custody and ordering only supervised visitation for him. We agree that the record does not contain substantial evidence to support the jurisdictional finding under subdivision (b) of section 300. Accordingly, we reverse the jurisdictional finding, the dispositional findings and orders, and the custody and visitation order.

BACKGROUND

I. *Detention*

Father lives with the paternal grandparents. At the time of the relevant events, Mother and Father shared legal and physical custody of 14-year-old Antonio pursuant to a family court order. Antonio lived in Mother's home but spent every other weekend with Father. Father also had visitation rights on two weekdays for several hours, but he had not been visiting Antonio during the week. Father had sole legal and physical

2

custody of seven-year-old Victoria, Antonio's half-sister. (Victoria is the subject of a separate dependency case and is not a subject of this appeal.)

Father called law enforcement in January 2023 because of a dispute with the paternal grandfather. Father reportedly "felt like paternal grandfather was turning Victoria against him." The detention report contains little detail about the incident. Father reported that officers "flipped the situation on him" and said that Father was isolating Victoria from the paternal grandparents. The officers stopped him from going to Victoria and arrested him for obstructing a peace officer (Pen. Code, § 148, subd. (a)(1)) and misdemeanor child abuse (*id.*, § 273a, subd. (b)). Several days later, San Bernardino County Children and Family Services (CFS) received a referral alleging that Father physically and emotionally abused Victoria, and the reporting party was concerned that Antonio was at risk of similar abuse.

Antonio told the social worker that he and Victoria were afraid of Father. There were a lot of verbal arguments in Father's home. Father got mad at little things, and Antonio and Victoria did not want to do something wrong. Father had mood swings and cursed at the children when he was upset. When Victoria was three or four years old, Father spanked her "'really hard'" on her buttocks.

According to Mother, Antonio worried about Father because Father was depressed and had mood swings. Antonio told her that he "walk[ed] on eggshells" at Father's home. The children had to stay in one room of the house, and Father made Antonio keep Victoria away from the paternal grandparents. Father screamed at Antonio for no reason, cursed at him, and called the police on the child.

3

Father reported that the paternal grandparents were the aggressors in the home and called them "'pathological liars.'"  He stated that the detention report in Victoria's case contained numerous false allegations.  He believed that the children were being manipulated to say that they feared him and that the paternal grandparents and the children's mothers were working together to take his children away.  Father said that Victoria could have claimed to be afraid of him because she was dyslexic, and she was "saying things that she believed people wanted to hear."  He denied cursing at Antonio.

The social worker reviewed the detention report in Victoria's case.  According to that report, Victoria said that Father slaps her across the face with force when she is in trouble.  Father did not allow her to be out of his sight in the home and did not permit her to speak to the paternal grandparents.

CFS filed a petition alleging that Antonio was a person described by section 300, subdivision (b), because Father had untreated mental health issues and Mother knew or reasonably should have known of those issues.  The petition also alleged that there was an open dependency case with respect to Victoria and that Father had physically abused her, placing Antonio at substantial risk of similar abuse under subdivision (j) of section 300.

In January 2023, the juvenile court detained Antonio from Father but not from Mother.  Antonio remained in Mother's home.

II. *Jurisdiction and Disposition Report*

When the social worker interviewed Father for the jurisdiction/disposition report, Father denied that he slapped, hit, or physically abused Victoria.  He called law

4

enforcement to report "'parental alienation,'" because the paternal grandmother told Victoria that he was a bad parent. He found Victoria in the paternal grandmother's room, took the child by the hand, and walked her out of the room. There was no physical altercation. He was arrested for obstruction of a child abuse investigation when he tried to enter the home while officers were investigating; he was concerned that the paternal grandmother was present during Victoria's interview. Father said that Victoria had a tendency to lie and embellish stories, and she had issues at school with lying, stealing, and being aggressive toward staff.

Father said that he did not use physical discipline with Antonio. He characterized Antonio's fear of him "as a natural fear a child has of their parent." Antonio had been getting into trouble at school, and Father believed that Antonio was afraid of being confronted about his behavior. Father said that he was stern but appropriate with Antonio.

Father was arrested in 2015 and 2016 for engaging in domestic violence with Victoria's mother. (The two were no longer in a relationship.) He denied engaging in domestic violence with the paternal grandparents. But he described two incidents that became physical: In December 2020, the paternal grandfather threw him to the floor and stomped on his face. The children were present during that incident. And on some unspecified date, the paternal grandfather repeatedly poked Father in the chest, and Father pushed him away. On that occasion, the paternal grandfather had attempted to remove Victoria from Father's room.

5

Father had contacted law enforcement roughly 15 times because the paternal grandparents interfered with his parenting practices. He acknowledged "the concerns" with his living situation, but he was unable to move out of the paternal grandparents' home at that time.

Father had a psychiatric evaluation in 2016, and there were no specific findings or diagnoses. He denied any mental health issues and had not been prescribed any psychotropic medications. He served in the military and was honorably discharged in 2010; after completing his active duty, he underwent a battery of tests and engaged in counseling. He did not suffer from posttraumatic stress disorder.

Antonio again reported that he was afraid of Father and that Father had mood swings. Father punished him by cursing at him, prohibiting him from watching television, or making him read a book. Approximately two years ago, Father pulled Antonio's hair and hit him on the buttocks with an open hand. And on some unspecified date, Antonio suffered a bruise on his eye when Father threw a cup. CFS responded on that occasion, but Antonio lied to the social worker and denied that Father caused the injury. Recently, he saw Father "push Victoria out of the way." Antonio estimated that Father had called law enforcement on the paternal grandparents 70 to 80 times. Typically, the arguments with the paternal grandparents were not violent. But on one occasion, Father pushed the paternal grandfather in self-defense. Father did not permit Antonio to communicate with the paternal grandparents. Besides one short phone call, Antonio had not visited with Father since the start of this matter. He was not interested in visiting Father.

6

Victoria reported that Father punches her on the back to discipline her. She said that he does not punch her anywhere else, and he had not slapped her in the face. He last hit her roughly one year ago. She denied that Father punched or slapped her during the recent incident when he was arrested. He called law enforcement because she talked to the paternal grandfather while Father was sleeping. She was not supposed to leave the room or have a relationship with the paternal grandparents. Victoria described Father's home as happy, sad, and mad. Father and the paternal grandparents always fought and argued. Victoria said that the fights are not physical, but they "'used' to be physical."

Mother noted concerns about Father's "'anger issues'" but denied any knowledge of an untreated mental health condition. She said that Father yelled and screamed when they argued during their marriage, but their fights did not turn physical. Mother had never seen marks or bruises on Antonio after his visits at Father's home.

III. *Amended Petition and Jurisdiction and Disposition Hearing*

CFS filed an amended petition a few days before the May 2023 jurisdiction and disposition hearing. The agency added a count under subdivision (b) of section 300. It alleged that Father engaged in domestic violence with the paternal grandparents, placing Antonio at substantial risk of emotional and physical harm.

At the hearing, CFS asked the court to sustain the allegations of domestic violence with the paternal grandparents, and the agency moved to dismiss all of the other allegations. The court found the allegations of domestic violence to be true and dismissed the remaining allegations. It also declared Antonio a dependent of the court, removed him from Father's custody, and placed him in Mother's custody. The court then

7

granted Mother sole legal and physical custody of Antonio and ordered two hours of supervised visitation per week for Father. The court dismissed the amended petition and terminated jurisdiction.

DISCUSSION

Father argues that the record does not contain substantial evidence to support the juvenile court's jurisdictional finding. We agree.

As relevant here, subdivision (b) of section 300 requires CFS to prove that the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" the parent's failure or inability to adequately protect the child. (§ 300, subd. (b)(1).) "[S]ection 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing," although the parent's "'"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601-602.)

Domestic violence "may support the exercise of jurisdiction under [subdivision (b) of section 300,] but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm." (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717, disapproved on another ground by *In re D.P.* (2023) 14 Cal.5th 266, 278.) Section 300, subdivision (b), does not authorize the court to take jurisdiction over a child on the basis of emotional harm. (*In re Jesus M.* (2015) 235 Cal.App.4th 104, 112.)

We review the court's jurisdictional findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) We examine the record in the light most favorable to the

8

court's findings and draw all reasonable inferences from the evidence to support the findings. (*Ibid.*) But "'[s]ubstantial evidence is not synonymous with any evidence. [Citation.] To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value.'" (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 602.) Mere speculation or conjecture does not constitute substantial evidence. (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.)

The evidence here is insufficient to support the court's jurisdictional finding under subdivision (b) of section 300. The amended petition alleged that domestic violence between Father and the paternal grandparents placed Antonio at risk of emotional harm, but emotional harm is not a basis for jurisdiction under subdivision (b) of the statute.[1]

As for physical harm, there was no evidence that Antonio actually suffered physical harm caused by violence between Father and the paternal grandparents. Nor was there evidence that such domestic violence placed Antonio at substantial risk of serious physical harm. There was no indication of ongoing violence between Father and the paternal grandparents at the time of the jurisdiction hearing. Father said that the children were present on one occasion when the paternal grandfather threw Father to the floor and stomped on his face. That occurred roughly two years before the referral in this case. On an unspecified date, the paternal grandfather was poking Father in the chest,

---

[1] Serious emotional damage, or a substantial risk of serious emotional damage, is a basis for jurisdiction under subdivision (c) of section 300. Serious emotional damage must be "evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others." (§ 300, subd. (c).) The amended petition did not contain any allegations under subdivision (c) of section 300.

9

and Father pushed him.  Father did not say whether the children were present on that occasion, but it may have been the single physical incident that Antonio described, when Father pushed the paternal grandfather "in self-defense."  But there was no evidence that Antonio was at risk of suffering accidental injury as a bystander on either of those two occasions.  And Antonio said that the arguments between Father and the paternal grandparents typically were not violent.  The two-year-old incident and the undated pushing incident did not constitute substantial evidence that Father placed Antonio at substantial risk of serious physical harm by engaging in domestic violence with the paternal grandparents.  Although the record contains considerable evidence that Father has an unhealthy, dysfunctional relationship with his parents, Father's conduct with them "did not demonstrate a risk of physical harm to [Antonio] justifying the assertion of jurisdiction under subdivision (b) of section 300." (*In re Jesus M.*, *supra*, 235 Cal.App.4th at p. 113; see also *ibid.* [the father's conduct toward the mother was "[r]eprehensible" and "detrimental to the emotional welfare of his children," but it did not support the finding that the children were at risk of physical harm].)  Accordingly, we must reverse the court's jurisdictional finding.

In the absence of jurisdiction, the court lacked authority to make (1) the dispositional findings and orders and (2) the custody and visitation order.  (*In re Jesus M.*, *supra*, 235 Cal.App.4th at p. 114.)  We therefore must reverse those findings and orders as well.

We note that Mother is free to seek sole custody or restrictions on Father's visitation in family court.  (*In re Jesus M.*, *supra*, 235 Cal.App.4th at p. 113.)  The family

court may intervene even if the evidence does not support juvenile court jurisdiction. (*Ibid.*)

## DISPOSITION

The juvenile court's jurisdictional finding, the dispositional findings and orders, and the custody and visitation order are reversed. The related order dismissing the amended petition and terminating jurisdiction is also reversed. On remand, the juvenile court shall find not true the allegation that Antonio is a person described by section 300, subdivision (b), on the basis of domestic violence between Father and the paternal grandparents. The court shall then dismiss the amended petition.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ _____
J.

We concur:

McKINSTER _____
      Acting P. J.

CODRINGTON _____
      J.