Filed 7/9/24  In re K.C. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re K.C., a Person Coming Under the Juvenile Court Law. | B327931 |
| | (Los Angeles County  Super. Ct. Nos.  21CCJP03112,  21CCJP03112C ) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.J.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charles Q. Clay III, Judge.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

---

## MEMORANDUM OPINION[1]

Appellant C.J. (mother) appeals the juvenile court's finding of jurisdiction over K., born in February 2015, on the basis of medical neglect. We find no error and affirm.

K. has activated P13K-delta syndrome, an immune system disorder. She had a bone marrow transplant in November 2020, and was discharged from the hospital in February 2021. K. developed graft versus host disease (GVHD), a condition in which donor cells attack the transplant recipient's cells. K.'s GVHD affected her skin. According to K.'s medical providers, skin-based GVHD "causes skin to be bound to the tissues below, as a result mobility and range or motion are limited. If not treated properly it can progress to complete immobility and impact the mouth, eyes, vaginal mucosa and other organs." K. was admitted to the hospital from April 6 to 16, 2022 for management of her GVHD.

---

[1] We resolve this case by memorandum opinion. (Cal. Stds. Jud. Admin., § 8.1.) We do not recite the factual and procedural background because our opinion is unpublished and the parties are familiar with the facts of the case and its procedural history. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].) Undesignated statutory references are to the Welfare and Institutions Code.

Mother acknowledges that she was not consistent about taking K. to follow-up visits and other appointments. Mother acknowledges, for example, that according to Children's Hospital Los Angeles (CHLA), as of June 2022 K. had missed 19 of her 33 scheduled follow-up appointments. In October 2022, a social worker and a public health nurse at CHLA reported that K. was "medically stable," but "Mother still continues to be tardy, re-schedules multiple times, or make unannounced . . . clinic visits." At the end of November 2022, a CHLA social worker noted that since June 28, K. "had approximately 75 Physical Therapy AND Occupational Therapy appointments scheduled at CHLA. Only 4 have been attended. The rest were cancelled, rescheduled or no shows." The social worker also stated, "The current primary concern is patient's lack of engagement in PT and OT as this could gravely impact her mobility long term."

After the Los Angeles County Department of Children and Family Services (DCFS) opened a non-detention case in October 2022, mother told DCFS that because CHLA was far from the family's home in Long Beach, mother struggled to get K. to all of her appointments. Mother said her work schedule, her other children's schedules, and heavy traffic made it difficult to get to CHLA. Mother had already requested that K.'s care be transferred to a location closer to the family home, and she was continuing to work on a transfer of care.

On December 1, 2022, K.'s care was transferred to a Kaiser location much closer to the family's home. Mother argues on appeal that after the transfer, K.'s "attendance at the numerous appointments improved." She asserts that "[b]y the time of the jurisdictional hearing on February 16, 2023," there was no basis

3

for the court to assert jurisdiction over K.[2] (See *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm'"].) Mother notes that on January 26 and February 8, the Kaiser social worker told DCFS that Kaiser had "no safety concerns for the child at [this] time." Mother argues the juvenile court's exercise of jurisdiction over K. on the basis of medical neglect under section 300, subdivision (b) therefore was not supported by substantial evidence. (See, e.g., *In re R.T.* (2017) 3 Cal.5th 622, 633 ["'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them"].)

We are not persuaded. The record shows that K. continued to miss appointments after her care was transferred to Kaiser. K. missed an appointment for an infusion on December 22. Kaiser called mother to reschedule the infusion (rather than mother calling to reschedule); the infusion was completed on December 28. Mother and K. also arrived 40 minutes late for a follow-up appointment on December 27. Mother was instructed on December 15 that K. would need to have lab work done before

---

[2]  The juvenile court found K. to be a person described under section 300, and pursuant to section 360, subdivision (b), ordered that K. remain with mother, and ordered services for the family. DCFS notes that it did not file a subsequent petition under section 360, subdivision (c), and therefore "the case is closed." Mother acknowledges that the appeal may therefore be deemed moot, but she asks that we exercise our discretion to consider the merits nonetheless. DCFS does not object. We exercise our discretion to consider the matter on the merits. (*See In re D.P.* (2023) 14 Cal.5th 266, 282.)

4

the December 27 appointment, but mother did not take K. to have the lab work done.  A second appointment was also scheduled for December 27, but K. did not show up.  The exam was rescheduled to December 30, but again K. did not show up.  Kaiser called mother (rather than mother calling) to reschedule the appointment for March 15. K. also did not attend a rheumatology appointment on December 29; the appointment was rescheduled to January 4, which K. attended.  The Kaiser social worker noted on December 30, 2022 that "Kaiser has concerns with mother's compliance with [K.'s] medical appointments."

On January 13, 2023, K. missed a primary care appointment; the appointment was rescheduled for March.  Mother was 30 minutes late for another medical appointment on January 19.  Mother told the social worker on February 2 that she also had been late to an occupational therapy appointment on an unspecified date, and that mother forgot to take K.'s splints to the appointment.

K. attended more of her appointments in the weeks before the February 16, 2023 hearing.  Mother's argument on appeal amounts to a contention that the juvenile court was obligated to consider only the evidence from the weeks immediately before the hearing, and disregard the earlier evidence.  Legal authority does not support this contention.  "Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.'" (*In re T.V., supra*, 217 Cal.App.4th at p. 133.)  In addition, "[t]he court may consider past events in deciding whether a child presently needs the court's protection. [Citations.]  A parent's "'[p]ast conduct may be probative of

current conditions" if there is reason to believe that the conduct will continue.'" (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.)

K. was medically fragile with a serious and potentially debilitating condition, although she was stabilizing. The record shows about seven months of missed appointments, and only a few weeks of improvement. K.'s attendance at her medical appointments did not initially improve when she transferred to Kaiser, but improved at a later date for reasons not explained in the record. The juvenile court was not obligated to consider only evidence from immediately before the hearing, as mother suggests. The juvenile court's finding that K. remained at risk of harm due to medical neglect at the time of the jurisdiction hearing was therefore supported by substantial evidence.

### DISPOSITION

The juvenile court's February 16, 2023 order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

CURREY, P.J.

ZUKIN, J.

6