Filed 12/6/24  In re M.M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>S.M.,<br><br>    Defendant and Respondent. | F088172<br><br>(Super. Ct. No. JD145369-00)<br><br>**OPINION** |

-ooOoo-

**THE COURT**\*

APPEAL from an order of the Superior Court of Kern County.  Susan M. Gill, Judge.

Margo A. Raison, County Counsel, and Ana M. Ovando, Deputy County Counsel, for Plaintiff and Appellant.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

---

\* Before Peña, Acting P. J., Smith, J. and Snauffer, J.

At issue in this case is the juvenile court's order offering family reunification services to S.M. (Mother). The Kern County Department of Human Services (Department) appeals, contending the court erred. We affirm.

## BACKGROUND

When Mother gave birth to the child at the center of this case, Mother tested positive for numerous illicit drugs. Mother's history with using those drugs is longstanding and well documented.

The Department swiftly detained the newborn child and filed a juvenile dependency petition, alleging Mother failed to protect the newborn, and Mother previously and similarly lost custody of another child due to drug abuse in a different dependency case. (Welf. & Inst. Code,[1] § 300, subds. (b)(1) & (j).) No family reunification services were ordered in that case. Specifically, the juvenile dependency petition explained "[M]other's ongoing substance abuse place[d] the [newborn] at risk."

At the disposition hearing, Mother testified she, in her prior case involving the other child, was addicted to drugs. She sought treatment then, but "relaps[ed]" because she could not continue to "afford" treatment. Relative to the newborn, Mother testified she quit using drugs "on [her] own free will." She was also enrolled in treatment and regularly attended "N[arcotics] A[nonymous] meetings …." She acknowledged "the last time [she] used any illegal substance" was after the petition was filed in this case, but was then-currently "111 days clean."

The juvenile court found Mother had "a long history of substance abuse, but" also that she "show[ed] the fortitude, … willpower, [and] intelligence" to analyze "her substance abuse[.]" It stated it was "so impressed with … [M]other" as she could "articulate why she wasn't successful [in treatment] before." It believed, "with a high

---

[1] All statutory references are to the Welfare and Institutions Code.

level of confidence," Mother would "succeed" with her treatment, "finding her to be very credible" and "very committed to … "sobriety[.]"

Ultimately, the juvenile court held "it would be contrary to the law to not offer [Mother] reunification services in this case." It did so, adjudging the newborn "a dependent of the Court" and ordering "[f]amily reunification services" to Mother "because she ha[d] made a reasonable effort to remove the problems that … led to the removal of the" other child.

## DISCUSSION

The Department contends the juvenile court erred in finding Mother made subsequent reasonable efforts to treat the drug addiction that led to removal of her child in a prior dependency case. It claims Mother "has a significant history of substance abuse," spanning more than a decade. Nonetheless, it acknowledges "the court must examine" a much shorter time period—the time between the prior child's removal and the newborn's disposition hearing.[2]

Mother, of course, argues the juvenile court's order was correct. We agree.

"When a child is removed from a parent in a juvenile dependency case, the court is required to order reunification services for the parent unless one of several statutory exceptions allowing for 'bypass' applies. [Citation.] As pertinent here, a juvenile court may bypass reunification services when (1) a juvenile court has previously terminated reunification or parental rights over a sibling or half sibling to the child in the current case, and (2) the parent has not subsequently made a 'reasonable effort' to treat the problems that led to that previous termination of services or parental rights." (*In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1266, fn. omitted (*Jayden M.*).)

"[I]n assessing whether a parent made a reasonable effort to address a problem from a prior dependency case involving the current child's sibling or half sibling and

---

[2] The time period in this case is approximately 15 months.

3.

where reunification services or parental rights were terminated under subdivisions (b)(10) or (b)(11) of section 361.5, the juvenile court should consider the entire time span between, at the one end, the earliest time a sibling or half sibling was removed from the parent's custody due to that problem and, at the other end, the dispositional hearing in the current case." (*Jayden M., supra,* 93 Cal.App.5th at p. 1274.) "A 'reasonable effort to treat' a problem means just that. The question is not whether the parent has ' " 'cure[d]' " ' or ' "abolished" ' the problem [citations], or whether the parent has 'attained' a ' "certain level of progress" [citation]. Instead, the focus is on the parent's *effort.* It is not enough to show 'any' effort, even a genuine one. [Citation.] '[L]ackadaisical or half-hearted efforts' will also not do. [Citation.] Instead, the effort must be *reasonable*, and reasonableness is assessed by looking to (1) the duration of the parent's effort, (2) the 'extent and context' of the parent's effort, and (3) other factors related to the 'quality and quantity of those efforts.' [Citation.] The parent's progress, or lack thereof, 'both in the short and long term'—while not dispositive—is nevertheless relevant 'to the extent it bears on the *reasonableness* of the effort made.' " (*Id.* at p. 1276, fn. omitted.)

" 'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633 (*R.T.*).)

We uphold the juvenile court's order. Mother testified she was enrolled in treatment, attending other meetings, not using drugs, and sober for "111 days." The court found Mother credible and, indeed, was "impressed with" her, especially her ability to pinpoint why prior treatment failed. Mother's insight lent credence to her belief

4.

treatment would now succeed. We will not—and cannot—second guess the court's credibility and factual determinations. (*R.T., supra,* 3 Cal.5th at p. 633.)

The parties also argue whether the juvenile court abused its discretion in ordering reunification services in this case. The argument is inapposite. When a juvenile court finds a parent has made reasonable efforts to treat the problem that led to the removal of a prior child, reunification services are mandatory.[3] (§ 361.5, subds. (a), (b), (b)(10) & (11) [reunification services "need not be provided" when court finds parent "has not subsequently made a reasonable effort"].) In other words, *no* reasonable effort is a condition precedent to bypassing reunification under these provisions.[4]

## DISPOSITION

The May 20, 2024, order is affirmed.

---

[3] The juvenile court correctly noted this in its ruling.

[4] Other statutory bypass provisions may still apply.