Filed 6/24/25  In re J.D. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.D., a Person Coming Under the Juvenile Court Law. | B337807 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>J.B.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 23CCJP04436, 23CCJP04436A) |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Emery F. El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

---

**MEMORANDUM OPINION[1]**

Mother Jennifer B. asserts that the juvenile court had insufficient evidence to assert jurisdiction over her one-year-old son, J., under section 300, subdivision (b).  We find no error and affirm.

First, we address the argument by respondent Los Angeles County Department of Children and Family Services (DCFS) that mother's appeal is moot.  DCFS notes that the juvenile court exercised jurisdiction over J. based on the conduct of both mother and J.'s father.  Father has not appealed, and mother does not challenge jurisdiction as it pertains to father's actions.  Thus, juvenile court jurisdiction over J. will remain despite mother's appeal.  (See, e.g., *In re D.P.* (2023) 14 Cal.5th 266, 276 [an

---

[1]  We resolve this case by memorandum opinion.  (Cal. Stds. Jud. Admin., § 8.1.)  We do not recite the factual and procedural background because our opinion is unpublished and the parties are familiar with the facts of the case and its procedural history.  (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].)  Undesignated statutory references are to the Welfare and Institutions Code.

appeal is moot when it is impossible for the appellate court to grant the appellant any effective relief].)

Even when a case is moot, however, courts may exercise their inherent discretion to reach the merits of the dispute. (*In re D.P., supra*, 14 Cal.5th at p. 282.) Mother asks that we do so here, because the jurisdiction finding could impact her custody of J. in the future. We exercise our discretion to consider the merits of the appeal.

Turning to the merits, mother contends the evidence was insufficient to support the juvenile court's finding of jurisdiction. Jurisdiction under section 300, subdivision (b)(1)(A) is appropriate when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he failure or inability of the child's parent . . . to adequately supervise or protect the child." We review a juvenile court's jurisdictional order for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Here, there was ample evidence to support a finding of jurisdiction. While investigating a double homicide allegedly involving father, police raided mother's home on December 21, 2023. They found two unloaded rifles in the dishwasher, an unloaded pistol in the cloth/mesh wrapping of a child car seat, and live ammunition in a box near the front door. J. was nearly 11 months old at the time; a report approximately two weeks later stated that he was crawling and pulling up on things to stand. Mother and father both denied all knowledge of the firearms. Mother said she did not use the dishwasher and J. did not use the car seat in which the pistol was found. Father said that he had no concerns about J. being near firearms because "he's only ten months so it's not like he know[s] how to use them."

3

Mother refused to enter into a voluntary safety plan with DCFS, and refused to enroll in parenting classes.

The court initially did not detain J. from mother. Instead, the court ordered father not to be in mother's home, and ordered that mother not monitor father's visits with J. However, at an unannounced visit on February 20, 2024, after receiving reports that father was at mother's home, a social worker saw father leaving mother's apartment. J. was then detained from mother and placed with maternal grandmother (MGM). Mother was later evicted from her apartment; she moved in with father.

By mid-April 2024, mother had refused to enroll in any support services and she continued to deny knowledge of the firearms in her home. Mother was no longer staying with father and she did not have stable housing, despite being welcome at MGM's home, where J. was living.

By the time of the jurisdiction hearing on May 17, 2024, mother had attended three parenting classes. DCFS recommended that J. remain detained from mother because mother "lack[s] insight and understanding as to the severity of the situation that warranted the Department's involvement," she "does not take accountability" about how her own actions led to J.'s detention, and she "has not been forthcoming with the Department." The court agreed that jurisdiction over J. was appropriate, noting while it is possible for firearms to be safely owned and stored in a home, mother's lack of candor with DCFS and her lack of credibility, including her claim to not know what items were in the home she shared with J., demonstrated a failure to protect J.

On appeal, mother argues that the firearms and ammunition did not constitute safety hazards because the guns

4

"were all unloaded" and "[n]one were found in the child's crib." However, mother claimed she did not even know the firearms were in her home—surely she could not have known whether they were loaded, safely stored, or within reach of her child. Unlocked, unsecured firearms and live ammunition within reach of a baby or toddler are inherently risky, and a parent's purported lack of awareness of that inherent danger amplifies the risk. A court "need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.)

Mother's appellate arguments are partially based on misrepresentations of the record. Mother argues, for example, that at the time of the jurisdiction hearing, "father had been arrested and the mother had not seen him since" the raid on her home. However, the record states that a social worker saw father leaving mother's apartment on February 20, and on March 19 mother told a social worker that she had been living with father. Mother also states in her opening brief that she had "moved in with the maternal grandmother," so there was little danger of J. being around father or firearms again. This is also incorrect. Mother did not live in MGM's home at the time of the hearing. Rather, in the disposition portion of the hearing, the court released J. to mother based on a requirement that as a part of the court-ordered safety plan, mother would move into MGM's home.

Moreover, to the extent mother's arguments are based on statements that contradict other evidence in the record, the juvenile court found mother not credible. We cannot disturb that ruling on appeal. (See, e.g., *In re R.T.* (2017) 3 Cal.5th 622, 633 [issues of fact and credibility are the province of the trial court].)

Thus, substantial evidence supports the juvenile court's jurisdiction finding as to mother.

## DISPOSITION

The juvenile court's May 17, 2024 order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


ZUKIN, ACTING P. J.



MORI, J.