Filed 8/24/23  In re K.L. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| In re K.L., a Person Coming Under the Juvenile Court Law. | B315137 |
| _____ | Los Angeles County Superior Court No. 21CCJP01727A |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| D.L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Commissioner.  Affirmed.

Law Offices of Arthur J. LaCilento and Arthur J. LaCilento for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

———————————

A father challenges jurisdictional findings and a dispositional order stemming from allegations he sexually abused his young daughter.  We affirm.  Substantial evidence supports the findings and order.  Undesignated statutory references are to the Welfare and Institutions Code.

In April 2021, the Los Angeles County Department of Children and Family Services filed a section 300 petition on behalf of the child, then five years old.  The petition detailed incidents of the father's abuse and claimed the child was at risk of serious physical harm and sexual abuse.  The petition also asserted the child's mother knew or should have known of the father's abuse but failed to protect the child.

The juvenile court sustained the petition and removed the child from the father's custody in September 2021.  The court found credible the child's consistent statements about the father's abusive conduct.

Recently, the court terminated jurisdiction and entered a custody order awarding the mother sole legal and physical custody of the child and granting the father visitation.  We take judicial notice of these orders.

We reach the father's jurisdictional challenge because the court's findings paved the way for the removal order and could affect future family law proceedings.  (See *In re D.P.* (2023) 14 Cal.5th 266, 276–278 [order remains subject to challenge where it affects parental custody rights or results in dispositional orders that adversely affect a parent].)

We do not reach the jurisdictional findings against the mother because the father does not attack them separately and because the mother abandoned her appeal.

We review jurisdictional findings and dispositional orders for substantial evidence. Substantial evidence is credible evidence that is reasonable in nature and of solid value. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154 (*V.L.*).) We indulge reasonable inferences and resolve conflicts in favor of the findings, examine the record in the light favorable to the juvenile court's determinations, and refrain from credibility determinations. (*Ibid.*; *In re R.T.* (2017) 3 Cal.5th 622, 633 (*R.T.*).)

A higher standard governs review for orders removing a child, which require clear and convincing evidence at the juvenile court. (See § 361, subd. (c).) We ask whether the record contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. (*V.L.*, *supra*, 54 Cal.App.5th at pp. 149, 154–155.)

For the father, the relevant jurisdictional provision is section 300, subdivision (d). This subdivision authorizes jurisdiction if a child has been sexually abused by a parent or there is a substantial risk of this abuse. Sexual abuse includes molesting a child, committing lewd or lascivious acts upon a child, and intentionally touching a child's intimate parts (or the clothing over them) for purposes of sexual arousal or gratification. (§ 300, subd. (d); Pen. Code, §§ 11165.1, subds. (a) & (b)(4).) Sexual abuse does not include acts that "may reasonably be construed to be normal caretaker responsibilities; interactions with, or demonstrations of affection for, the child; or

3

acts performed for a valid medical purpose."  (Pen. Code, § 11165.1, subd. (b)(4).)

The record satisfies section 300, subdivision (d).  The child consistently disclosed that her father rubbed her vagina over her clothes, it felt good, she wanted to rub a classmate's private part because of what the father had done to her, and she was not to tell the mother about the touching.

We detail this evidence.

The child's teacher reported the abuse to the Department on April 9th, 2021.  According to the teacher, the child kicked a male classmate in his private area.  The teacher spoke with the child, who said she kicked the boy there " 'to make him feel good like daddy.' "  The child demonstrated how the father touched her by holding up three fingers and moving them in circles on her vagina.  This was their " 'little secret.' "  The child also reported the father had her touch his "peeker," it felt yucky and funny, and it made him feel good.  Afterward, the father would tell her he loves her and she is cute.

The teacher followed up with the child later in the day.  The child confirmed the father rubbed her private area.  She said she liked "to play that game because it feels like she is flying in the sky."  The child "demonstrated how she opens her legs wide to show how she opens her legs when her father[ ] rubs her private area with three fingers."  The teacher believed the child.  The teacher also believed the incident was recent, as she recently noticed the child hugged boys more and wanted to kiss them, and the child started touching herself while she slept.  A while back the child said her vagina hurt, and she "was really red and itchy."

Later in the day of the referral, the child told police her father touches her private parts while she has underwear on;

4

then he tells her he loves her. The child showed how the father touched her by placing her palm against her vagina. She said her father sometimes used a spoon or a spatula to touch her. According to the child, the father told her not to tell her mother because the mother would get mad.

The child confirmed to a social worker that she wanted to rub her classmate's private parts and that her father touched her private parts. She said, " 'He rubs me round and round because it's fun for me.' " The child demonstrated how the father touched her by rubbing a stuffed animal between its legs in a circular motion. She said she wore clothes when her father touched her. The father did it because she liked it, the child reported, and he told her it was okay if someone touches her private part. He asked her to keep "the rubbing" a secret.

The child had a forensic interview later in April 2021. She confirmed she "was just trying to rub" her classmate's private part and she thought about it because of her father "rubbing me in my private. . . . Daddy rubs me in my private and feels like I'm on the beach." He used his hands and a spatula to do this, she said. The child reported her father's hand tickles her privates over her clothes and it feels great. She demonstrated how the father moved his fingers in an up and down/back and forth motion. The father would say: " 'I love you . . .and I like tickling you.' "

During a forensic examination near the end of April, the child told a nurse she tried to rub her friend's private part. She reported her father " 'touched me here (patient grabs genital area) with his hand and spatula in the kitchen.' "

In May 2021, the child told another social worker she wanted to rub her friend's "private."

The investigating detective who took the case after the initial police report believed the child, and he believed her statements were consistent. He planned to submit the case to the District Attorney's office.

Finally, in July 2021, the child testified she wanted to rub her classmate's private part because "it feels like the beach every time when daddy does it to me."

This is substantial evidence the father sexually abused the child. (See § 300, subd. (d).) And from this evidence, a reasonable trier of fact could have found it highly probable the child would remain at risk of harm if returned to her father's care and no reasonable means short of removal could protect her. (See § 361, subd. (c)(1); *V.L.*, *supra*, 54 Cal.App.5th at pp. 156–157.)

At the juvenile court, the father denied any wrongdoing—until he refused to answer questions on the advice of counsel. He painted his child as imaginative and unbelievable. He did not enroll in "any services or programs to address the issues of this case." These actions signal the father lacked the willingness or ability to change his behavior such that alternatives to removal (like in home services) would be ineffective. And while the father maintains on appeal that there was a "strong support system" in the family home, the supporters he identified—the mother and her father—apparently were unwilling or unable to view the father as an offender.

The father says the juvenile court erred in believing the child. He essentially argues the child's statements against him are entitled to no weight because she included fantastical details and contradicted herself, and because an interviewer was suggestive. For example, the child told police she had a snoring tiger in her attic, and she told the forensic interviewer the

6

father's spatula looked like a black cat.  The father notes various people said the child had a vivid or active imagination.

The juvenile court reasonably concluded the child's April 2021 statements were credible and imagination did not explain them.  The child provided a consistent outline of her father's actions at each telling that month, and she described realistic acts using words consistent with her age.

It is true, during her testimony, the child ultimately denied anyone touched her private areas.  But this happened after she spontaneously acknowledged the father's touching, as we recounted above.  And it happened after the child acknowledged the judge would decide whether her father could return home.  The child thus underscored a reason this testimony was less credible than her previous reports.  The juvenile court rationally determined the consistent nature of the child's initial reports—which were made close in time to the referral, to at least five different people, before the child learned of any effect of her statements—made them more credible.

Later in the investigation, the child refused to answer questions about any touching and shut down when asked about the abuse, so her therapist stopped discussing the allegations for a period.  Then by August 2021, the child told her therapist " 'nobody unsafe touches me, nobody means nobody!' "  These actions and comments similarly did not render the child's initial, consistent statements unreliable.  It made sense that the child grew guarded and even hostile weeks and months after her father had to leave the family home.  The child missed her father, wanted him home, and was "very upset that no one listens to her and brings her Daddy back home from work."  The child's retreat from her initial reporting was understandable, as she seemed to

connect this reporting to her father's absence.  The juvenile court reasonably could conclude this retreat signaled the child would be unlikely to report future abuse.  The court also reasonably could give little weight to the therapist's remarks in *August 2021* that she did not observe "any behaviors that indicate abuse" or "troubling warning signs of sexual abuse."

The father complains a social worker was biased against him and omitted exculpatory evidence from Department reports.  This witness's failure to recall details of various reports and interviews at trial, and her failure to do the follow-up the father desired in hindsight, did not show bias.

As for the Department's reports, the detention report noted the initial police investigation was inconclusive and would be referred for further investigation; it included the father's denials; it noted the mother's, grandfather's, and a neighbor's shock or disbelief regarding the allegations; and it attached the police report.  The jurisdiction report followed up with the new detective who took on the case; it attached service logs showing the initial police investigation was inconclusive; it incorporated the text of the police report and attached this report; it attached the forensic examination report; it twice noted the child did not disclose the father's touching until one hour and 22 minutes into the forensic interview, and it referred the court to the disk of this interview; it documented the child's and the father's later refusals to answer questions about the allegations; it recorded when the child was untruthful (she made up a cousin); and it noted several times the child generally was happy and healthy.  One Last Minute Information stated the father's monitored visits were going well with no reported concerns; another highlighted recent information from the child's therapist that helped the father, and

it attached the therapist's letter.  The juvenile court appropriately consulted these reports and appropriately considered the social worker's testimony.

The father attacks the juvenile court's reliance on the forensic interview.  But the father did not object when the court admitted the interview transcript into evidence.  And there is no transcript in our record to check the father's claims.  Even if there were, these claims boil down to an improper request that we reweigh the evidence.

The father maintains the Department's case was insufficient because the Department did not identify dates, times, and other circumstances of the abusive acts.  The information, however, came from a five-year-old.

The father implies the mother's testimony was more credible than his daughter's statements.  We may not reevaluate witness credibility or reweigh the evidence.  (See *R.T.*, *supra*, 3 Cal.5th at p. 633; see also *V.L.*, *supra*, 54 Cal.App.5th at pp. 154, 156, 157 [appellate court views the evidence favorably to the respondent and disregards conflicting evidence].)

Moreover, any discounting or skepticism of the mother was reasonable.  The mother told a social worker she believed the daughter and feared the father could be grooming her for intercourse; then at trial, she tried to clarify her comments to the social worker and testified in support of the father.  The mother attributed the child's issues to potty training problems and testified she applied ointment to address the child's irritated private parts using a tongue depressor or a disposable applicator.  But as far as we can tell, the child never discussed touching by the mother.  Instead, the child repeatedly mentioned rubbing of her private part by the father, while she was clothed.

9

## DISPOSITION

We affirm the jurisdictional findings and dispositional order.


WILEY, J.


We concur:


STRATTON, P. J.


VIRAMONTES, J.