Filed 12/23/25  In re T.F. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re T.F., et al., Persons Coming Under the Juvenile Court Law. | B338828 |
| _____<br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.F.,<br><br>Defendant and Appellant. | Los Angeles County Superior Court No. 20CCJP02369B-C |

APPEAL from orders of the Superior Court of Los Angeles County, Cathy J. Ostiller, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

_____

A mother of three small children was wanted as an accessory to murder. The primary murder suspect was the father of the youngest child. This father is M.S. The ensuing dependency case encompassed the incarcerated father of the two older children. This father is D.F. D.F. appeals the juvenile court's jurisdictional and dispositional rulings, to the extent they concern him and his two children. We dismiss part of his appeal as moot and otherwise affirm. Code citations are to the Welfare and Institutions Code.

I

When this case began in February 2024, D.F.'s children were five and two. The jurisdiction report describes how the children came to the attention of the Los Angeles Department of Children and Family Services:

"On 2/15/24, The Los Angeles Sheriff's Department Homicide Bureau in collaboration with the Federal Bureau of Investigation executed a dual search warrant to the home of the primary suspect/father, [M.S.]. Law enforcement arrested [M.S.] for a murder that occurred in Compton, CA . . . . In addition, law enforcement received information that [M.S.] left the firearm in his home or the home of his mother [ ]. Law enforcement executed the search warrants to recover the Glock that was used in the murder. Law enforcement discovered three minor children under the care of their paternal great grandmother [ ] who also resides in the home. Law enforcement reported the home is a known gang hang out spot. Law enforcement reported concerns for the children as paternal great grandmother was shot, in a separate incident, on her leg during a gang shooting outside of her home. The mother is currently on the run as there is a

warrant for her arrest for murder; [M.S.] and [D.F.] are currently incarcerated.  There is no legal guardian to care for the children.  Additionally, maternal grandmother [ ] reported to be the power of attorney for the [three children] . . . .  However, [she] failed to provide appropriate Court documents granting such order."

The Department could not locate the oldest child, so the court issued a protective custody warrant for this child.  The Department and law enforcement suspected the maternal family of harboring the child and the mother.  The family was uncooperative and misled authorities.

The Department eventually found the child and filed a dependency petition asserting jurisdiction under section 300, subdivision (b).  The petition's one count (count b-1) highlighted facts from above and stated all three children faced a serious risk of harm due to all three parents' absence and their failure or inability to provide care.

D.F. and his wife—the stepmother of D.F.'s two children—told the Department from the outset that they wanted the children placed with the stepmother.

During its investigation, the Department learned of an earlier dependency case involving the mother, D.F., and the oldest child.  The court sustained allegations regarding D.F.'s domestic violence and a history of violent altercations between the parents.  D.F. assaulted and hospitalized the mother while she was pregnant.  He did not make substantial progress in his court-ordered programs and failed to reunify with his child, so the court ended the case by awarding sole custody to the mother.  This was in 2021.

Amid the current dependency proceedings, D.F. was sentenced to a prison term of 15 years to life on murder charges from 2021. His criminal history before this was extensive.

From the time D.F. was incarcerated in October 2021 until these proceedings, the stepmother had no contact with D.F.'s two children. After this case began, she monitored calls between D.F. and the children. She did not try to have in person visits or to establish a bond with them at first.

The Department attempted to interview D.F in jail. At least two attempts were thwarted: once by a lockdown and once because a deputy told the visiting social worker D.F. refused to meet. With the stepmother's help, the social worker eventually talked to the father on March 29, 2024. The social worker explained his role to D.F. and raised the allegations against the mother with D.F.

Also on March 29, 2024, D.F.'s appointed attorney appeared at a hearing where he waived D.F.'s appearance, agreed the petition identified D.F. as offending, and entered a general denial for D.F.

On April 12, 2024, the Department filed an amended petition. It appears the social worker had signed this petition electronically more than two weeks earlier, before the social worker talked to D.F. about the case.

The amended petition asserted three new counts: two were based on the two fathers' extensive criminal histories (counts b-3 and b-4). Because the court struck these counts, we move to the count the court sustained (count b-2). This count read: D.F. "has an unresolved anger management. The [oldest child] was a prior dependent of the Court due to the father's behavior. The [father] failed or refused to participate in prior Court orders. The father

failed to reunify with the child. Thus, the children remain at substantial risk of serious physical harm, abuse and/or neglect."

The notice of hearing on the amended petition and related proof of service show the Department mailed this petition to the father in jail, at the address he provided to the court. The notice also provided the social worker's dispositional recommendations.

The juvenile court accepted the amended petition and dismissed the original at the next hearing, on April 15, 2024. This was the date scheduled for D.F.'s arraignment on the amended petition. When D.F.'s attorney said he was not prepared to arraign his client, the court continued the matter to the adjudication date of April 29, 2024.

D.F. and his wife both attended the joint adjudication and disposition hearing on this date. The Department offered its reports into evidence. No witness testified. D.F.'s attorney argued against each count that concerned D.F. He maintained D.F. posed no risk to the children and should have been interviewed about the new allegations, and he asked the court to strike D.F. from the petition. Counsel did not argue notice was improper or inadequate. Nor did he say any witness or other evidence was needed to defend against the new allegations.

The Department and the children's attorney asked the court to sustain the first two counts. Regarding D.F., they focused on his unresolved anger issues and his failure to address these issues.

The juvenile court found notice was proper. It sustained the original failure to protect count (b-1) and the new count concerning the father's anger management problems (b-2). The court noted D.F.'s anger issues had carried over from the last

5

dependency case, and he did not make an appropriate plan for the children while he was incarcerated.

The court struck the remaining two counts and turned to disposition.

Consistent with its reports, the Department recommended the children be removed from parental custody and suitably placed. The children's attorney also argued for removal from all parents. D.F.'s attorney did *not* argue against removal. Instead, he submitted "on suitable placement" and argued for reunification services.

The court declared the children dependents, removed them from the parents, and ordered reunification services for each parent, over the Department's objections as to D.F. The court also addressed the case plans, visitation, and other matters.

Only after both fathers waived reading of their appellate rights did the court turn to the issue of the children's placement. At the time, all three children were living in a foster home.

D.F.'s attorney asked the court to place the children with the stepmother. The children's attorney and the Department argued for placement with M.S.'s godmother—someone who was not a family member, but who had bonded with the children and previously had fostered family members. In contrast, they argued, the stepmother did not have a good relationship with the children, and her few visits with them "did not occur very smoothly." The court ordered placement with the godmother.

D.F. appealed these orders.

## II

We reject D.F.'s due process attack on the jurisdictional findings and conclude substantial evidence supports them. D.F.'s

6

dispositional and placement challenges are forfeited and moot, respectively.

## A

D.F. claims the Department denied him due process by providing inadequate notice of the amended petition and by not interviewing him about the new allegations. He further argues substantial evidence does not support the findings against him. D.F. has not shown any due process violation, prejudice, or error in assuming jurisdiction.

### 1

Due process is a flexible concept requiring notice reasonably calculated to apprise parents of the proceedings and to afford them a chance to object. (*A.F. v. Jeffrey F.* (2023) 90 Cal.App.5th 671, 690 (*A.F.*).)

The record here shows the Department mailed the amended petition by certified mail on April 5, 2024, to the jail address D.F. provided. Moreover, D.F.'s counsel knew of the amended petition, at the very least, when the court accepted this petition at the April 15th hearing and gave counsel additional time to address the new allegations.

D.F. then appeared with his attorney at the adjudication hearing on April 29th. He does not claim he had insufficient time to prepare. Indeed, his counsel argued against each count.

Instead, D.F. maintains the Department violated various constitutional rights because a social worker did not interview him about the new allegations, thereby "silencing" him and depriving him of the chance to defend himself meaningfully.

D.F. also criticizes the Department for trying harder to locate the mother than to talk with him, and for not including its

7

report with the amended petition when noticing the adjudication hearing.

D.F. cites no law suggesting any of this conduct amounts to a constitutional violation.

In any event, these supposed missteps were harmless by any standard. (See *In re Celine R.* (2003) 31 Cal.4th 45, 59–60 [the typical harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818 applies in dependency cases]; *A.F.*, *supra*, 90 Cal.App.5th at pp. 691–692 [applying the prejudice standard for federal constitutional errors].)

As mentioned, the record shows the Department provided D.F. notice of the new allegations concerning his anger several weeks before the adjudication. It also shows D.F.'s counsel was prepared to counter these allegations at the hearing yet declined to offer evidence.

D.F. at no point disputed any facts about the earlier dependency case involving his domestic violence. Nor does D.F. dispute he was imprisoned for murder soon after that dependency case ended with no reunification. D.F. also did not attempt to argue that he had addressed his anger issues in prison or that these issues had resolved by the time of the current case.

Indeed, the record shows D.F.'s anger problems continued up to the adjudication hearing, and they affected his children. The children's caregivers facilitated phone visits between D.F. and his children. They reported D.F. grew angry during these calls and repeatedly berated his children when they played. D.F.'s toddler son did not want to speak with him. Sometimes when D.F. grew angry, the stepmother did not intervene. She seemed to not pay attention to the calls. D.F. even argued with the stepmother during one call, with the children present.

8

On this record, any failure to interview D.F. about his unresolved anger management problems was harmless beyond a reasonable doubt. The same conclusion holds for the other failures D.F. cites. None made any difference here, where the court also sustained the original count involving D.F. (See *In re James F.* (2008) 42 Cal.4th 901, 916, 918 [denial of right to notice and hearing harmless if the outcome of the proceeding has not been affected].)

2

D.F. is left with his uphill attack on the sufficiency of the evidence. However, substantial evidence supports the jurisdictional allegations concerning D.F. (See *In re R.T.* (2017) 3 Cal.5th 622, 633 [appellate courts review jurisdictional findings for substantial evidence].)

As just discussed, the evidence shows D.F. had not resolved the anger issues that earlier had resulted in a judicial finding that he hospitalized the mother while she was pregnant with D.F.'s oldest child. These anger issues persisted while D.F. was in jail with this case pending, and they affected the children even in their limited contact with D.F. Further, the stepmother was no buffer: she exhibited indifference to the children and at times was unwilling or too distracted to protect them from D.F.'s anger. The risk of neglect and harm posed by D.F. to the children in the stepmother's care thus was live.

Substantial evidence also shows, for count b-1, that the children were at risk of serious physical harm because no parent—including D.F.—had ensured or could ensure a safe home for the children. The FBI's and Sheriff Department's involvement in this family underscore this point. D.F. and the stepmother maintained no ties with the children until this

9

proceeding, exhibiting indifference to their safety and enabling the perilous situation giving rise to this case. And for the reasons just explained, the juvenile court reasonably could infer the children's safety would be compromised in the stepmother's care.

Contrary to D.F.'s arguments, the court did not premise jurisdiction solely on D.F.'s incarceration.

B

Moving from jurisdiction to disposition, D.F. forfeited his appellate challenge to the children's removal by acceding to this disposition at the juvenile court. (See *In re F.P.* (2021) 61 Cal.App.5th 966, 974.)

At the adjudication and disposition hearing, D.F.'s attorney argued against jurisdiction and against the Department's recommendation to place his children with the godmother. In contrast, regarding disposition, counsel submitted on suitable placement and argued for reunification services. He mentioned neither section 361 nor section 361.2, provisions that feature prominently in his opening brief.

D.F.'s acceptance of removal at the juvenile court extinguishes his current appellate challenge. We do not reach his arguments about removal.

C

Finally, D.F. apparently anticipated his children's placement might change and preemptively argued against mootness in his opening appellate brief. He maintains the juvenile court erred by ignoring the relative placement preference under section 361.3. He states, without explanation, that this placement issue is a substantial one of public interest that is capable of recurring and evading review.

10

On our own motion, we take judicial notice of the juvenile court's orders from the October 2025 review hearing, which terminated the suitable placement orders and returned D.F.'s children to the mother's custody.

These orders moot the placement issue.  D.F. presents no compelling reason for us to exercise our discretion to reach the merits.  (See *In re D.P.* (2023) 14 Cal.5th 266, 285–287 [identifying circumstances in which a court may exercise discretionary review of moot appeals].)

## DISPOSITION

We dismiss D.F.'s appeal as to the children's placement in April 2024.  We affirm the challenged jurisdictional and dispositional findings and orders.


WILEY, J.

We concur:


STRATTON, P. J.


VIRAMONTES, J.

11